IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | |
|---|---|
| DWAYNE DRAKE, | ) CASE NO.  1:19-CV-02419 |
| Plaintiff, | ) ) ) ) |
| v. | ) MAGISTRATE JUDGE ) WILLIAM H. BAUGHMAN, JR. ) |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) MEMORANDUM OPINION AND ) ORDER ) ) |
| Defendant. | ) |

**Introduction**

Before me[1] is an action by Dwayne Drake under 42 U.S.C. § 405(g) seeking judicial review of the 2018 decision of the Commissioner of Social Security that denied Drake's 2017 application for Supplemental Security Income.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my initial[5] and

---

[1] The parties consented to my exercise of jurisdiction and the matter was then transferred to me by United States District Judge James S. Gwin. ECF No. 14.
[2] ECF No. 1.
[3] ECF No. 8.
[4] ECF No. 9.
[5] ECF No. 5.

procedural[6] orders, the parties have filed briefs[7] and supporting charts.[8] They have met and conferred[9] with the intent of narrowing the issues in dispute and have participated in a telephonic oral argument.[10]

For the following reasons the decision of the Commissioner will be reversed and the matter remanded.

## Facts

The relevant facts are simply stated.

**A.    ALJ Decision**

Drake, who was 47 years old at the time he filed the application for benefits,[11] has a GED[12] but no past relevant work experience.[13] The ALJ found that Drake is essentially "homeless," living between homes of friends, and without a specific routine of daily activities.[14] Although he has a history of "anger difficulties," "mood swings" and "irritability," he "routinely" presented as alert, well-groomed, oriented and in no distress.[15]

The ALJ determined that he has the following severe impairments:

---

[6] ECF No. 11.
[7] ECF Nos. 16 (Drake), 18 (Commissioner).
[8] ECF Nos. 15 (Drake), 18, Attachment 1 (Commissioner).
[9] ECF No. 19.
[10] ECF No. 21.
[11] Tr. at 31.
[12] *Id*. at 281.
[13] *Id*. at 31.
[14] *Id*. at 25.
[15] *Id*. at 25-26.

2

> Degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the bilateral knees, with mild genu valgum deformity and chondromalacia patella on the right; history of right nephrectomy status-post gunshot wound and stage three kidney disease; mild bilateral carpal tunnel syndrome; schizoaffective disorder; depressive disorder; antisocial personality disorder; intermittent explosive disorder; and post-traumatic stress disorder.[16]

After reviewing the evidence, the ALJ then found that Drake has the residual functional capacity (RFC) to preform light work, with the following limitations:

> The claimant can lift and carry up to 20 pounds occasionally and ten pounds frequently. The claimant can sit, stand or walk for six hours each of an eight-hour workday. The claimant can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid hazards such as unprotected heights and moving mechanical machinery. The claimant cannot perform commercial driving. The claimant can perform simple, routine tasks and make simple work-related decisions. The claimant can tolerate occasional and superficial interaction with supervisors and coworkers with superficial meaning, he cannot perform arbitration, negotiation, mediation, confrontation, or supervision of others. The claimant cannot tolerate interaction with members of the general public. The claimant can tolerate a relatively static work environment, meaning one with no more than occasional change and with such changes being explained in advance. The claimant can tolerate a work environment that does not include strict production requirements or a fast pace.[17]

After noting that transferability of job skills was not an issue because Drake had no past relevant work,[18] the ALJ asked a vocational expert (VE) to testify as to what, if any, jobs would be available in significant numbers in the national economy for an individual with Drake's RFC.[19] The VE testified that marker, garment sorter and checker – which are

---

[16] *Id.* at 22.
[17] *Id.* at 26.
[18] *Id.* at 31.
[19] *Id.* at 32.

3

performed at the light, unskilled level – are available in significant numbers.[20] The ALJ then found Drake not disabled, denying his application.[21]

**B.  Drake's Brief**

Drake raise two issues:

1. Did the ALJ err by basing Drake's mental RFC on outdated opinions.[22]
2. Did the ALJ violate his heightened duty to an unrepresented claimant to fully develop the record.[23]

As to the first issue, Drake argues initially that the ALJ "cherry-picked" the record when evaluating the mental health opinions of Clifflora Wright, LSW, and Margaret Onyeukwu, CNP.[24]

In the first instance, the ALJ considered a two-page "Daily Activities Questionnaire" prepared in April 2018 by Wright,[25] a licensed social worker who had been seeing Drake since September 2017.[26] The ALJ cited a single statement from that questionnaire in response to an inquiry asking the respondent to describe how Drake "got along with former employers, supervisors, and co-workers … during attempts to return to work."[27] LSW

---

[20] *Id.*
[21] Id. at 32-33.
[22] ECF No. 16 at 12-15.
[23] *Id*. at 15-17.
[24] ECF No. 16 at 13-14.
[25] Tr. at 410-12.
[26] *Id*. at 1552.
[27] *Id*. at 408.

4

Wright replied that [Drake] has been unsuccessful in attempts to return to work due to psychosis."[28]

The ALJ noted that this response "did not provide any specific information in support of that assertion, or examples of past work attempts that failed."[29] He also asserted that this statement "conflicts" with what Drake told the consulting examining psychologist that he attempted to return to work in 2012 but failed a background check.[30] The ALJ found that LSW Wright's observation was "conclusive" and "inconsistent" with MetroHealth treatment notes showing that his depression responded to medication.[31]

Drake argues here that Wright's own notes are sufficiently detailed to support her statement and that, moreover, it is consistent with and supported by MetroHealth records, which the ALJ failed to address.[32]

As to Nurse Onyeukwu, Drake points out that her December 2018 opinion specifically states that Drake's depression was showing very little improvement despite treatment.[33] Further, when Drake returned to Nurse Onyeukwu in February 2019, she

---

[28] *Id*.
[29] *Id*. at 30.
[30] *Id*.
[31] *Id*.
[32] ECF No. 16 at 13.
[33] *Id*. citing record.

5

reported that he remained psychotic and depressed.[34] According to Drake, Nurse Onyeukwu's records support LSW Wright's opinions.[35]

These observations relate to the second element of the first issue – that the ALJ improperly relied on opinions from state agency non-examining consultants issued in January 2018 and April 2018.[36] Drake contends that reliance on these opinions without evaluating the later evidence like Nurse Onyeukwu's 2019 opinion requires remand.[37]

As to the second issue, Drake asserts that while the ALJ recognized Drake's mild carpal tunnel syndrome as a severe impairment, he failed to find any work-related limitations from it because he erroneously determined that this condition produced any upper extremity or manipulative limitations.[38] In fact, a March 2019 EMG revealed clinical evidence suggesting left C5 chronic radiculopathy.[39] But Drake points out that there was no assessment of his functional capacity after this test and no opinion as to the combined effect of this new condition with his carpal tunnel syndrome.[40]

**B.    Commissioner's Brief**

---

[34] *Id*. citing record.
[35] *Id*.
[36] *Id*. at 14-15.
[37] *Id*. at 15.
[38] *Id*. at 16.
[39] *Id*. at 17 citing record.
[40] *Id*.

As to the first issue, the Commissioner argues that the ALJ specifically discussed both LSW Wright and Nurse Onyeukwu's treatment notes.[41] While noting initially that the ALJ is not required to address the relevance of every piece of evidence, the Commissioner states that the ALJ here "thought the most salient aspects of the notes" is in their failure to "support the levels of concentration, attention and memory deficits alleged by [Drake]."[42] To that end, the Commissioner maintains that the ALJ reasonably considered the evidence and reached a conclusion within the zone of choice.[43]

Further, as to reliance on purportedly outdated opinions, the Commissioner states that while the state agency doctors did not have all the evidence that the ALJ ultimately possessed, the ALJ properly considered all evidence in arriving at the decision.[44]

Finally, the Commissioner contends that even if the ALJ owed a heightened duty to Drake to develop the record, Drake cannot point to any evidence, in existence at the time of the hearing, that the ALJ could have requested or procured.[45]

## Analysis

**A.  Standards of Review**

I undertake the following analysis under the well-know substantial evidence rubric that need not be restated here.

---

[41] ECF No. 18 at 6.
[42] *Id.*
[43] *Id.* at 6-7.
[44] *Id.* at 8.
[45] *Id.* at 11.

7

In addition, because this claim was filed after March 27, 2017[46] the analysis here must also employ new regulations for evaluation of medical opinions.[47]

Under these new regulations, Commissioner will no longer defer to, or give any specific evidentiary weight to, any medical opinion or prior administrative medical finding, including those from the claimant's medical sources. Rather, the Commissioner will evaluate the "persuasiveness" of all medical opinions under such factors as: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements.[48] But supportability and consistency are the most important factors.[49]

The revised regulations also changed the articulation required of the ALJ when considering medical opinions. The revised standard notes first that the ALJ need not articulate on how every factor was considered in evaluating multiple opinions from the same source. Rather, the ALJ will articulate "how we considered the medical opinions … from that medical source together in a single analysis using the factors listed … as

---

[46] It was filed September 20, 2017. Tr. at 20.
[47] *Revisions to Rules,* 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c(a).
[48] 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5).
[49] 20 C.F.R. § 404.1520c(b)(2).

8

appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."[50]

Further, as noted, the factors of consistency and supportability are the most important factors considered in determining the persuasiveness of an opinion.[51] The ALJ "will explain how we considered the supportability and consistency factors" for a source's opinion "in your determination or opinion."[52] That said, the ALJ "may, but [is] not required to, explain how we considered" the remaining factors, such as length and type of treatment relationship.[53] But how those other factors are considered will be articulated in the case of analyzing two or more equally persuasive medical opinions on the same issue.[54]

Finally, although the revised regulations "eliminate 'physician hierarchy, 'deference to specific medical opinions, and assigning 'weight 'to a medical opinion, the ALJ must still articulate how [he/she] considered the medical opinions 'and 'how persuasive [he/she] find[s] all the medical opinions."[55] A reviewing court evaluates whether the ALJ properly considered the factors set forth in the regulations to determine the persuasiveness of a medical opinion."[56]

---

[50] 20 C.F.F. § 404.1520c(b)(1).
[51] *Id*. at (b)(2).
[52] *Id*.
[53] *Id*.
[54] *Id*. at (b)(3).
[55] *White v. Comm'r*, 2021 WL 858662, at *17 (N.D. Ohio March 8, 2021) (quoting *Ryan v. Comm'r*, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019) (quoting 20 C.F.R. § 404.1520c(a)&(b)(1), 416.920c(a)&(b)(1)).
[56] *Id*.

9

**B.     Application of Standards**

The parties 'discussion of the first issue, which goes to mental limitations, suggests the old carnival shell game. While Drake's arguments directly discuss the ALJ's specific statement that there is no support for LSW Wright's comment concerning Drake returning to work, the Commissioner insists that the ALJ intended the pea to be found under the cup labeled concentration, attention and memory deficits.

In fact, what the ALJ sought to show that Wright's overall opinion as to Drake's mental function was not supported by the other evidence and/or inconsistent with such evidence by cherry-picking one line in Wright's opinion. Far from a focused inquiry into the issue of concentration, attention and memory deficits, as the Commissioner would have it, the ALJ's opinion itself says that it is examining the Wright questionnaire "with regard to claimant's mental limitations."[57] Further, to the extent the specific questionnaire answer is necessarily a response to just a single inquiry, the opinion itself also makes clear that the inquiry did not concern concentration, attention and memory, but was "an opinion regarding the claimant's ability to work."[58]

That said, in attempting to show inconsistency, the ALJ argues that Wright's comment about Drake failing to return to work because of psychosis is inconsistent with MetroHealth's records that show Drake's symptoms of depression responded to

---

[57] Tr. at 30.
[58] *Id.*

10

medication.[59] But, as Drake points out, Nurse Onyeukwu's final treatment note of February 5, 2019 is that he remained psychotic and depressed.[60] In fact, the preceding treatment note of December 10, 2018 goes further and states that although Drake was compliant with his medication and psychotherapy, he was showing very little improvement and is clinically depressed.[61]

In short, Wright's comment is consistent with Nurse Onyeukwu's latest treatment notes which, in turn, are not consistent with the ALJ's characterization of them as showing that Drake's depression responded to medication.[62] The ALJ's statement, which did reference Nurse Onyeukwu's early treatment notes as to how Drake's symptoms responded to medication in the months immediately after he started treatment in December 2017,[63] was itself impermissible cherry-picking if Nurse Onyeukwu's notes constitute later specific evidence from the same source that contradicted the conclusion the ALJ sought to support.[64]

Although some of the arguments presented here seem to suggest that an issue arises as to whether the ALJ could rely on the earlier, preferred opinions of state agency sources over later opinions from lesser sources like Nurse Onyeukwu or LSW Wright, my understanding of the revised regulations, quoted above, is that they have eliminated the

---

[59] *Id.*
[60] Tr. 1563.
[61] *Id.* at 976.
[62] *Id.* at 29.
[63] *Id.* at 29.
[64] *White*, 2021 WL 858662, at * 20 (citations omitted).

hierarchy of sources and deference to certain opinions in favor of reviewing relevant opinions on the basis of their persuasiveness, under the lens of their consistency with other evidence and their support from such evidence.

As such, even though the revised regulation is less stringent in its requirements for analyzing medical opinions, they still require, at a minimum, that the ALJ articulate his analysis of an opinion's persuasiveness by discussing its consistency with the other evidence and whether it is supported by that evidence. An ALJ cannot build a logical bridge between the evidence and his conclusion out of elements that significantly mischaracterize that evidence.[65]

As to the second issue regarding a duty to develop the record more, I find that the ALJ here complied with the "special duty" to develop the record for unrepresented claimants. As was discussed in *Jones v. Commissioner*,[66] the duty to develop the record fundamentally concerns "developing the record to the fullest extent possible in the courtroom" and does not extend to the ALJ actually obtaining records for a claimant, except in the rare circumstance where a claimant is essentially incapable of presenting his claim.[67]

---

[65] Johnson v. Comm'r, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").
[66] 2013 WL 4748083 (N.D. Ohio Sept. 4, 2013).
[67] *Id.* at *7.

## Conclusion

For the reasons stated, the decision of the Commissioner is reserved and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 31, 2021　　　　　　　　　　　　　　　　s/William H. Baughman Jr
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge